UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SULLIVAN BROWN,

    Petitioner,                            Case No. 05-71736-DT

v.                                     HONORABLE GERALD E. ROSEN
                                        UNITED STATES DISTRICT JUDGE

RAYMOND BOOKER,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Sullivan Brown, ("petitioner"), presently confined at the Ryan Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree murder, M.C.L.A. 750.316; felon in possession of a firearm, M.C.L.A. 750.224f; and felony-firearm, M.C.L.A. 750.227b. For the reasons stated below, the petition for a writ of habeas corpus is **DENIED**.

**I. Background**

       Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> On the afternoon of October 23, 2000, Kwan Campbell was shot to death in Detroit. Campbell's friend, Gregory Murrie, testified that he saw Campbell walking down the other side of a residential street that day. Murrie said he saw a white Grand Marquis automobile drive up to where Campbell was, and

two young men--one tall and thin and one short and stocky--alighted and spoke with Campbell for a couple of minutes.

Murrie then observed Campbell walking away from the men and around the side of a house.  The house's occupant, Tracey Pryor, testified that between 12:30 and 1 p.m. that day, she saw a neighborhood man (who was later identified as the deceased) standing in her yard.  Murrie and Pryor saw Campbell begin to run when they heard gunshots.  Murrie testified eight to nine shots were fired by two people.  Pryor heard Campbell yelling that he had been shot and saw him fall to the ground.  Murrie and Pryor then watched the Grand Marquis drive away.  Pryor called 911.

Officer Charles Adams was patrolling the neighborhood at about 1 p.m. when he heard shots fired.  He saw a white Grand Marquis automobile pull onto the same street and a bystander yelled to him, "those guys right there just shot my boy."  Adams pursued the car, which initially refused to stop.  The car finally stopped in front of a house that belonged to Mary Jenkins' mother.  According to Mary's testimony, at 1 p.m. that day she arrived for a visit.  Her three sons, Brandon, Corey, and Christopher Jenkins were playing video games there.  Corey testified that he had arrived at the house at 12:30 p.m.

According to Adams and Derrick Riley, Adams's companion officer, one of the occupants of the Grand Marquis alighted after stopping the car and ran between some houses.  Two other unidentified passengers ran into the house where the car was stopped.  Riley briefly caught and temporarily lost his grip on one of the individuals, who he identified as Ronnie Brown.  Mary testified that Ronnie and defendant are her "adopted nephews."

Mary heard a noise coming from the living room of the house, and on investigation, she saw police outside and noticed that her sons were upset for some reason.  Corey said he knew nothing of the shooting or of any disturbance before being informed, when he went downstairs, that the police were outside.  Adams and other officers took the five young men into custody from the house-- defendant, Ronnie, Brandon, Corey, and Christopher.

A 9 mm handgun was discovered in the Grand Marquis.  Eight empty 9 mm shell casings were retrieved from the street vicinity of the Jenkins home, and two empty slugs were retrieved from the ground.  One of the casings matched the gun discovered in the Marquis.  Police found that the other seven casings were fired from another unidentified firearm.  A search of the Jenkins home revealed no firearms or other evidence.  Defendant's palm print was discovered on a side view mirror of the Marquis.

The defense called one of the Detroit Crime Lab's forensic chemists, who testified that hundreds of particles of gunshot residue remain on a shooter for

>approximately six hours following firing, and that the residue is easily removed by washing. Forensic tests revealed no gunshot residue on defendant, Corey, or Ronnie between four to six hours after the shooting. Brandon showed miniscule residue, but Christopher tested positive, although in an extremely low quantity.
>
>Brandon's statement to the police following the incident was introduced at trial pursuant to MRE 803(24) and 804(b)(7) over defendant's hearsay objection. Brandon stated that he was at his grandmother's house playing video games with Ronnie and went upstairs when he heard a door slam and pounding on the door. When he went downstairs, he saw defendant running through the house and saw the police outside pounding on the door. Brandon stated that Christopher and defendant were not in the house before he went upstairs, implicating Christopher and defendant in the shooting.
>
>Murrie identified defendant in a lineup, stating that he was 90 percent sure defendant was the individual he saw shoot Campbell.
>
>*People v. Brown,* No. 237027 (Mich.Ct.App. September 9, 2003).

Petitioner's conviction was affirmed on appeal. *Id.* The Michigan Supreme Court remanded the case to the Michigan Court of Appeals in light of the U.S. Supreme Court's recent decision in *Crawford v. Washington, infra. People v. Brown,* 470 Mich. 851; 679 N.W. 2d 73 (2004).

On remand, petitioner's conviction was again affirmed. *People v. Brown,* (On Remand) 237027 (Mich.Ct.App. July 6, 2004); *lv. den.* 472 Mich. 882; 693 N.W. 2d 893 (2004)(Kelly, J. would grant leave to appeal).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

>I. Petitioner was denied his state and federal constitutional rights to a fair trial and to effectively confront the evidence against him.
>
>II. The prosecutor presented insufficient evidence to prove beyond a reasonable doubt that petitioner was the shooter.

3

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. Discussion

### A. The motion for the appointment of counsel will be denied.

Petitioner has requested the appointment of counsel to assist with his habeas case.

There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir. 2002)*; Lemeshko v. Wrona,* 325 F. Supp, 2d 778,

787 (E.D. Mich. 2004). The decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require. *Mira v. Marshall*, 806 F. 2d 636, 638 (6th Cir. 1986). Appointment of counsel in a habeas proceeding is mandatory only if the district court determines that an evidentiary hearing is required. *Lemeshko,* 325 F. Supp. 2d at 787. If no evidentiary hearing is necessary, the appointment of counsel in a habeas case remains discretionary. *Id.*

Counsel may be appointed, in exceptional cases, for a prisoner appearing *pro se* in a habeas action. *Lemeshko*, 325 F. Supp. 2d at 788. The exceptional circumstances justifying the appointment of counsel to represent a prisoner acting *pro se* in a habeas action occur where a petitioner has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim. *Id.*

Petitioner has filed a petition for writ of habeas corpus and a reply brief which responds to the respondent's answer. Petitioner's claims are "sufficiently clear and coherently organized as to allow this Court to weigh the merits of his claims." *Lemeshko,* 325 F. Supp. 2d at 788. In light of the fact that none of these claims have any merit, petitioner is not entitled to the appointment of counsel. *Id.* The motion for the appointment of counsel is denied.

> **B. Claim # 1. The Michigan Court of Appeals' determination that the Confrontation Clause violation in this case was harmless error was not unreasonable.**

Petitioner first contends that the prosecutor erroneously introduced the out-of-court statement of Brandon Jenkins, in violation of his Sixth Amendment right of

5

confrontation. The Michigan Court of Appeals originally found no error in the admission of this statement. The Michigan Supreme Court remanded the matter to the Michigan Court of Appeals for reconsideration, in light of the U.S. Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36 (2004), which held that out-of-court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court.

On remand, the Michigan Court of Appeals ruled that in light of the holding in *Crawford,* the admission of Brandon Jenkins' out-of-court statement violated petitioner's right to confrontation. However, the Michigan Court of Appeals held that the introduction of Jenkins' statement was harmless beyond a reasonable doubt. The Michigan Court of Appeals noted that the evidence included eyewitness testimony that petitioner shot the victim in the middle of the day and then jumped into the front seat of a white Mercury Grand Marquis. The eyewitness testified that a taller, leaner accomplice also shot at the victim and jumped into the car's back seat. Police, who came upon the scene moments after the shooting, followed the vehicle until it stopped at a house. The occupant of the front passenger-side seat ran into the house. Police later brought petitioner out of the house, and the eyewitness picked him out of a lineup as the shorter and stockier shooter. The eyewitness reported and later testified that he would never forget petitioner because of "the bullish look on his face while he was shooting." Police found petitioner's palm print on the passenger's side mirror of the Grand Marquis, and the eyewitness's description of the shorter and stockier shooter

6

did not match the description of anyone else found in the Jenkins house. Finally, another witness testified that the victim and a female acquaintance of petitioner got into an argument two days before the shooting in petitioner's presence. Given this overwhelming evidence against petitioner, the Michigan Court of Appeals concluded that the admission of Jenkins' statement was harmless error. *People v. Brown,* (On Remand), No. 237027, Slip. Op. at * 1-2.

Neither the Michigan appellate courts nor respondent contest the fact that the admision of Brandon Jenkins' statement violated petitioner's right to confrontation. Therefore, the sole question for this Court is whether the Michigan Court of Appeals' determination on remand that the admission of this statement was harmless error was a reasonable decision.

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F. 3d 329, 334 (6th Cir. 2001). On direct appeal, a constitutional error such as a Confrontation Clause violation is harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Id.* at 334-35 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). However, the harmless error test for federal habeas review of state court decisions is different. A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the jury's verdict. *Id.* (*quoting Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)). If a habeas petitioner satisfies the *Brecht* standard, "[h]e will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt ... resulted from an unreasonable application of *Chapman*." *Bulls,* 274 F. 3d at 335 (*quoting Nevers v. Killinger*, 169 F. 3d 352, 371-72 (6th Cir. 1999)). Therefore, in reviewing the Michigan

Court of Appeals' harmless error determination, this Court can grant petitioner habeas relief only if he carries his burden of showing that the Confrontation Clause error had a substantial and injurious effect or influence in determining the jury's verdict. *Id.*

Petitioner has failed to carry his burden of establishing that the admission of Brandon Jenkins' statement had a substantial and injurious effect or influence on the jury's verdict, in light of the overwhelming evidence of guilt in this case. Petitioner was identified by an eyewitness to the shooting as one of the two shooters in this case. Petitioner's palm print was found on the passenger's side mirror of the Grand Marquis. Police came upon the scene only moments after the shooting and followed this car until it stopped at the Jenkins house. Petitioner was the only man inside of the house who matched the eyewitness's description of the shorter and stockier shooter. Finally, there was also evidence of an altercation between the victim and a female acquaintance only two days prior to the shooting, in which petitioner was present.

The erroneous admission of Jenkins' hearsay statement does not warrant federal habeas relief, because the error did not have an injurious effect on the fundamental fairness of the trial, where there was ample evidence besides this statement upon which to base the conviction, and the verdict would not have been different had the statement been excluded. *Ford v. Curtis,* 277 F. 3d 806, 810 (6th Cir. 2002). Petitioner is therefore not entitled to habeas relief on his first claim.

**C. Claim # 2.  There was sufficient evidence to establish petitioner's identity as one of the shooters.**

Petitioner next contends that there was insufficient evidence to establish his

8

identity as one of the shooters in this case.

In rejecting this claim on petitioner's initial appeal, the Michigan Court of Appeals noted that a witness identified petitioner as one of the two shooters, the police followed the shooters' car to the Jenkins' home, petitioner's palm print was found on the side of the car, and Brandon Jenkins confirmed that petitioner was not in the house until the police chased him there from the crime scene. *People v. Brown,* No. 237027, Slip. Op. at * 5.  In addition, while reviewing the evidence on remand to evaluate whether the admission of Jenkins' statement was harmless, the Michigan Court of Appeals noted that there had been a recent confrontation between the victim and a female acquaintance of petitioner in his presence.  The eyewitness picked petitioner out of a lineup as being the shorter and stockier shooter and testified that he would never forget petitioner because of "the bullish look on his face while he was shooting."  Petitioner was also the only person found by police at the Jenkins' house who matched this description. *People v. Brown,* (On Remand), No. 237027 Slip. Op. at * 1-2.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  The determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *See Dillard v. Prelesnik,* 156

F. Supp. 2d 798, 805 (E.D. Mich. 2001). In addition, the habeas court does not substitute its judgment for that of the finder of fact. *Id.*

Petitioner contends that there was insufficient evidence to establish his identity as one of the shooters because of problems with Gregory Murrie's identification of him as being one of the attackers.

The weight to be given to an in-court identification of a defendant is a question properly left for the jury. *See United States v. Briggs,* 700 F. 2d 408, 414 (7th Cir. 1983); *See also Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001)(the weight to which eyewitness testimony is given at trial is a question of fact for the jury). The trier of fact must assess any inconsistencies in determining the weight that should be accorded the identification. *United States v. Goodman,* 797 F. 2d 468, 471 (7th Cir. 1986). In addition, the identity of a defendant can be inferred through circumstantial evidence. *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

Petitioner is not entitled to habeas relief, because his claim that Murrie's identification of him was unreliable or inconsistent relates to the reliability or credibility of this witness, not to the legal sufficiency of the evidence. *See Gibbs v. Kemna,* 192 F. 3d 1173, 1175-76 (8th Cir 1999). Murrie testified that he was 90 % certain that petitioner was the person whom he identified as the shorter and stockier shooter. Murrie further testified that he would never forget petitioner, because of the "bullish look" on his face during the shooting. In addition, there was ample circumstantial evidence to bolster Murrie's identification, including the fact that the police chased the Grand Marquis from the scene of the shooting to the Jenkins' home. Petitioner was the only person found inside the house who resembled the shorter and stockier shooter.

Petitioner's palm print was found on the Grand Marquis. In this case, any risk of misidentification was reduced by the fact that petitioner's palm print was recovered from this car. *See e.g. Kennaugh v. Miller,* 150 F. Supp. 2d 421, 437 (E.D.N.Y. 2001). In light of the fact that Murrie's identification of petitioner was not patently incredible, as well as the fact that there was additional evidence from which the jury could properly infer that petitioner was one of the shooters, there was sufficient evidence to establish petitioner's identity in this case so as to sustain his conviction. *See United States v. Caraway,* 411 F. 3d 679, 682-83 (6th Cir. 2005). Because there was sufficient evidence presented at trial for a rational trier of fact to conclude beyond a reasonable doubt that petitioner was the perpetrator of the crime, petitioner is not entitled to habeas relief on this claim. *Dell v. Straub,* 194 F. Supp. 2d at 648.

### D. The Court declines to address any additional claims which petitioner possibly raises in his reply brief.

In his reply brief, petitioner for the first time appears to be raising additional claims that were not raised in his initial habeas petition. Petitioner claims that he was arrested without a warrant and detained for four days without being arraigned. Petitioner also may be claiming that the identification procedures employed in his case were unduly suggestive. Petitioner also appears to claim that the trial court erred in admitting his prior criminal history into evidence. Petitioner further claims that the trial court failed to recuse himself from his case due to judicial bias. Petitioner finally claims that one of the jurors in his case should have been excused from jury service because she was a 911 operator. It is unclear, however, whether petitioner seeks to raise these as independent claims or merely to buttress the two claims that were raised in the

initial petition.

A traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004)(internal citations omitted). "[A] court cannot consider new issues raised in a traverse or reply to the State's answer." *Id.* Because these claims are being presented for the first time in petitioner's traverse or reply brief, rather than in his habeas petition, this Court declines to address these claims, because they are not properly before this Court. *See Tyler v. Mitchell,* 416 F. 3d 500, 504 (6th Cir. 2005); *cert. den. sub nom as Tyler v. Anderson,* 126 S. Ct. 1774 (2006).

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate

of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002). Therefore, a district court has the power to deny a certificate of appealability *sua sponte. See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

s/Gerald E. Rosen
United States District Judge

Dated: September 18, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 18, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager